UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAVVA KHALILOVA,<br><br>                    Petitioner,<br><br>v.<br><br>KENNETH C. SMITH, San Diego Field Office Director, U.S. Immigration and Customs Enforcement, et al.,<br><br>                    Respondents. | Case No.:   25-CV-2140 JLS (DDL)<br><br>**ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, AND (2) DENYING AS MOOT PETITIONER'S MOTION FOR LEAVE TO AMEND PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(ECF Nos. 1, 5) |

Presently before the Court is Petitioner Havva Khalilova's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.," ECF No. 1). Also before the Court is Respondents Kenneth C. Smith's (San Diego Field Office Director, Immigration and Customs Enforcement), Todd Lyons's (Acting Director of Immigration Customs Enforcement), Kristi Noem's (Secretary of the U.S. Department of Homeland Security), and Pamela Bondi's (Attorney General of the United States) (collectively, "Respondents") Return in Opposition ("Opp'n," ECF No. 4) and Petitioner's Traverse ("Traverse," ECF No. 6). Further before the Court is Petitioner's Motion to Amend Petition for Writ of Habeas Corpus ("Mot.," ECF No. 5). For the reasons set forth below, the Court **DENIES** Petitioner's Petition for a Writ of Habeas Corpus and **DENIES AS MOOT** Petitioner's Motion to Amend.

# BACKGROUND

Petitioner is a native and citizen of Azerbaijan and is currently detained at the Otay Mesa Detention Center by the Department of Homeland Security, Bureau of Immigration and Customs Enforcement. Pet. ¶ 9. On December 1, 2024, Petitioner entered the United States between ports of entry near Tecate, California. Opp'n at 2. Petitioner was determined inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) and 8 U.S.C. § 1182(a)(7)(A)(i)(I) and was placed into expedited removal proceedings under 8 U.S.C. § 1225(b)(1). *Id.* On January 13, 2025, Petitioner was interviewed by a U.S. Citizenship and Immigration Services asylum officer to determine whether she had a credible fear of persecution or torture if removed to Azerbaijan. *Id.* The asylum officer concluded she did not. *Id.* On January 28, 2025, an immigration judge reviewed and vacated the asylum officer's determination. *Id.* On February 4, 2025, Petitioner was issued a Notice to Appear (NTA), charging her as inadmissible and commencing removal proceedings under 8 U.S.C. § 1229a. *Id.* at 2–3. Petitioner remained in custody, received a bond hearing, and was denied bond. *Id.* at 3.

On July 28, 2025, Petitioner had an individual hearing before an immigration judge where she was found removable under 8 U.S.C. § 1182(a)(6)(A)(i).[1] *Id.* The immigration judge ordered Petitioner to be removed from the United States, denied her application for asylum, and granted her application for withholding of removal under 8 U.S.C. § 1231(b)(3).[2] *Id.* This decision means that Petitioner cannot be removed to Azerbaijan, and

---

[1] 8 U.S.C. § 1182(a)(6)(A)(i) designates as inadmissible, and therefore "ineligible to receive visas and ineligible to be admitted to the United States," illegal entrants who are present "without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General."

[2] 8 U.S.C. § 1231(b)(3) states, with exceptions, that "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."

if Immigration Customs Enforcement (ICE) seeks to remove Petitioner, it must find a third country willing to accept Petitioner.[3]  Pet. ¶ 17.

On August 21, 2025, ICE submitted resettlement requests to Armenia, Hungary, and Canada. Opp'n at 3. Canada has denied the resettlement request, and ICE has not received a final decision from Hungary and Armenia.[4]  *Id.*  As such, Petitioner remains detained and now seeks the Court to either order Petitioner's release under supervision pursuant to 8 C.F.R. § 241.5(a) or direct a bond hearing before an immigration judge. Traverse at 3.

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention— federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*,

---

[3] 8 U.S.C. § 1231(b)(2)(E) lists the countries that are available to the Secretary of Homeland Security to resettle a noncitizen who has received protection against removal under § 1231(b)(3). These include: the country from which the alien was admitted, the foreign port where the alien left for the United States, the country where the alien resided before the country from which the alien entered the United States from, the country where the alien was born, the country that had sovereignty over the alien's birthplace, the country where the alien's birthplace is located when the alien is ordered removed, and "[i]f impracticable, inadvisable, or impossible to remove the alien to each country described in a previous clause of this subparagraph, another country whose government will accept the alien into that country." § 1231(b)(2)(E). This section is applicable when the Secretary is unable to remove the noncitizen under subparagraph (D)—a country where the alien is a subject, national, or citizen.

[4] Respondents claim that the Hungarian Consulate General has responded that the request was forwarded to the Hungarian Ministry of Foreign Affairs and Trade. Opp'n at 3. Respondents have not provided an update on communications with Armenia. *See generally id.*

138 S. Ct. 830 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION

When an alien is denied asylum, granted withholding of removal under 8 U.S.C. § 1231(b)(3), and ordered removed, they must be detained for ninety days (90) pending the government's efforts to secure their removal to a third country. *See* 28 U.S.C. § 1231(a)(2). This ninety-day period is referred to as the "removal period." § 1231(a)(1)(A). After the removal period, this statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States" and "does not permit indefinite detention." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). A six-month period of post-removal detention constitutes a "presumptively reasonable period of detention." *Id.* at 701. After this six-month period passes, the petitioner has the burden to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If petitioner satisfies their initial burden, it then shifts to the Government to rebut that showing. *Id.* "[F]or detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. In that case, the alien's release may be conditioned on any of the various forms of conditioned release. *Id.* at 700.

Of importance here is when the "removal period" begins. "[T]he removal period begins when an alien is 'ordered removed,' and the removal order becomes 'administratively final.'" *Johnson v. Guzman Chavez*, 594 U.S. 523, 534 (2021).

///
///
///
///
///

> Section 1231(a)(1)(B) states that:
>> The removal period begins on the latest of the following:
>> (i) The date the order of removal becomes administratively final.
>> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Petitioner argues that, because she has been detained by ICE since December 1, 2024, that this is the date the removal period begins, and therefore, her detention is beyond the six-month presumptively reasonable period. Traverse at 2. Respondents argue that this Petition is premature because the removal period began after the immigration judge's order of removal and granting of withholding of removal on July 28, 2025. Opp'n at 6. Respondents then conclude that the presumptively reasonable removal period will not end until "approximately January 28, 2026." *Id.*

"[W]here an alien seeks release prior to the expiration of the presumptive six-month period, [her] claims are unripe for federal review." *Waraich v. Ashcroft*, No. CVF051036, 2005 WL 2671406, at *1 (E.D. Cal. Oct. 19, 2005) (citing *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002)); *see also Ali v. Barlow*, 446 F. Supp. 2d 604, 609 (E.D. Va. Aug. 28, 2006) (finding petitioner's habeas petition premature when the six-month period had not passed). Here, Petitioner's removal order became administratively final on July 28, 2025, because that is when the immigration judge entered a final order of removal. *See, e.g.*, *Conchas-Valdez v. Casey*, No. 25-cv-02469-DMS-JLB, 2025 WL 2884822, at *1–2 (S.D. Cal. Oct. 6, 2025) (finding the removal period began when the immigration judge deferred petitioner's removal under the Convention Against Torture); *Vlasov v. Bondi*, No. 25-cv-1342-AJB-MSB, 2025 WL 2258582, at *1 (S.D. Cal. Aug. 7, 2025) (finding the removal date to be the withdrawal of an appeal of the immigration judge's decision to withhold petitioner's removal to Russia under § 1231 due to a likelihood of political

persecution). Therefore, Petitioner's claim will become ripe for review by January 28, 2026—six months after July 28, 2025—making the current Petition premature.

Even if Petitioner's claim was ripe, the Court is not persuaded that Petitioner has met her burden of demonstrating that there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.[5] *See Trinh v. Homan*, 466 F. Supp. 3d 1077, 1092 (C.D. Cal. 2020) (stating that the *Zadvydas* court did not preclude a noncitizen from challenging their detention before the end of the six-month period, but nonetheless finding petitioners had not satisfied their initial burden). Respondents state that "ICE is in the process of obtaining travel documents from a third country," and "ICE remains actively working to locate a third country for resettlement." Opp'n at 3, 6. Petitioner attempts to argue that because ICE is considering Armenia as a possible resettlement location that this demonstrates that "ICE's efforts were made without diligence or regard for humanitarian and legal obligations." Traverse at 2. According to Respondents, ICE is waiting on a response from the Hungarian Ministry of Foreign Affairs and Trade and is continuing to look for alternatives. Opp'n at 3. While the consideration of Armenia as a safe removal option may prove to be doubtful, ICE is still actively looking for a third country option, and Petitioner has not raised evidence stating otherwise. *See Conchas-Valdez*, 2025 WL 2884822, at *3 (satisfying petitioner's burden where petitioner repeatedly requested updates and was ignored, petitioner was denied by three countries, respondents failed to name any other countries the Government was working with, and petitioner was told that his assigned officers had not done anything on his case for several months).

---

[5] Petitioner incorrectly states that, at this time, the Government has the burden of demonstrating that Petitioner's removal is significantly likely to occur in the reasonably foreseeable future. Traverse at 1. Petitioner bears the initial burden to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Once that is met, the burden will shift to the Government. *Id.*

Therefore, because the six-month period of presumptive reasonableness has not passed, Petitioner's claim is not ripe for review, and even if it were ripe, Petitioner has not met her initial burden.

## CONCLUSION

Based on the foregoing, the Court **DENIES** Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) **WITHOUT PREJUDICE**. Because Petitioner can refile this petition and correct any errors, Petitioner's Motion to Amend (ECF No. 5) is **DENIED AS MOOT**. As this concludes the litigation in this matter, the Clerk of the Court **SHALL** close the file.

**IT IS SO ORDERED.**

Dated: November 5, 2025

Hon. Janis L. Sammartino
United States District Judge